THE STATE *vs.* REBECCA DAVIS.

1. The township of Camden, and that part of the county included in said township, extend to the middle of the river Delaware; other parts of the county extend only to the eastern side of the river.

2. The Court of Oyer and Terminer and General Jail Delivery of the county of Camden has no jurisdiction to try criminals for offences committed on the river Delaware, outside of the limits of the county.*

The prisoner was indicted for the murder of her infant child, by the grand jury of the county of Camden; and having been tried before the Court of Oyer and Terminer, at October term, 1855, was found guilty of murder in the first degree. It appeared that she went on board a steamboat at Philadelphia with her young child, three or four weeks old, and that upon the arrival of the boat at Camden the child was gone. There was evidence that she confessed to have thrown the child overboard. A fireman on board the boat swore, that he saw a woman come out of the cabin, and sit down on a bench. After sitting a little bit, she raised up, and slipped something under the slat of the boat; that he then got up, and went to the side of the boat, but could see nothing that had been thrown over; the boat was about half way across the river; could not say whether across the bar or not. This was all the evidence tending to show at what place the child was thrown over. It having been objected, on behalf of the prisoner, that the court had no jurisdiction to try offences committed on the river Delaware, the judge, for the purpose of having the question settled by the Supreme Court, charged the jury in favor of the jurisdiction; and the question was referred to that court for its advisory opinion, sentence being in the mean time deferred. Exceptions were also taken to the charge of the court in several other particulars; but, as no opinion was given by the court upon those questions, it is not necessary to state them.

The defect of jurisdiction has been remedied by an act passed March 14, 1856.—*Pamph. L.* 242.

Argued before the CHIEF JUSTICE, and ELMER, POTTS, and HAINES, Justices, by *Mulford*, for the state, and *Browning*, for the prisoner.

ELMER, J.  It was held by Judge Washington, in the case of *Corfield* v *Coryell*, 4 *W C. R.* 371, I think correctly, that according to the true construction of the original grants to New Jersey, the territory was limited to the eastern shore of the Delaware river and bay, and that prior to the Revolution the counties bounding thereon were limited in the same way.  The river and bay remaining in the crown, ungranted to any of the colonies, became vested in the adjoining states at the declaration of independence, so that the boundary of each extended to the middle, but the counties remained as before.  In the year 1783 an agreement was entered into between the states of New Jersey and Pennsylvania, and ratified by the respective legislatures, which provided that each state shall enjoy and exercise a concurrent jurisdiction within and upon the water, and not upon the dry land, between the shores of said river, (with certain exceptions, not material to be noticed now,) but that the juridical investigation and determination of all capital and other offences, trespasses, or damages committed on said river shall be exclusively vested in the state wherein the offender or person charged with such offence shall be first apprehended, arrested, or prosecuted.  *Nix. Dig.* 825.

Gloucester county is bounded, by the act of 1709–10, by the river.  The original boundaries of Newton township, which now forms a part of Camden county, I have not been able to find.  In 1828, *Pamph. L.* 193, a part of Newton was incorporated as the city of Camden, and the boundary is described as beginning at the Pennsylvania line in the river Delaware, opposite the mouth of a small run below Kaighnton; thence east to the mouth of said run; thence, several courses, to Coopers cree ; thence

down the middle thereof to the river Delaware; thence, due north, to the middle of the channel between Petty's island and the Jersey fast land or shore; thence, down said channel and river, to the nearest point on the line between the states of Pennsylvania and New Jersey; thence down said line to the beginning. In 1831, *Pamph. L.* 17, Camden was constituted a township, with the same boundaries. The act establishing the county of Camden, *Nix Dig.* 154, sets off certain townships from Gloucester, and among them the township of Camden, and constitutes them a new county.

It is undoubtedly true that the boundaries of the township of Camden are very unskilfully defined; but I think the fair construction of the act referred to is, that they extend to the middle of the river. The southern line begins in the river, and the northern line does not stop at the mouth of Coopers creek, but is carried, by express words, into the river, to the middle of the channel between Petty's island and the Jersey shore; thence down said channel and river to the nearest point on the line between the states of Pennsylvania and New Jersey. Unless by that line is meant the line established by the Revolution, which for all purposes not provided for by the agreement between the two states is the true and only line, these words must be rejected as wholly senseless and unmeaning.

The Court of Oyer and Terminer of the county of Camden, like other similar courts in the state, is confined in its jurisdiction to the limits of the county, unless additional jurisdiction is given by the act ratifying the agreement. It was ingeniously argued, on behalf of the state, that the agreement ought to be so construed as to give jurisdiction to the courts of the county in which the offender was in fact first arrested, apprehended, or prosecuted. But this would be a very strained and unnatural meaning of the terms employed. Such a construction

would allow an offender to be tried in any county, however remote from the scene of the offence. The object of the agreement was to apportion the jurisdiction between the two states, leaving to the legislative power of each, to whom it properly belonged, to provide the courts, and to determine the manner in which it should be exercised. This has not been done in this state. An act was passed in 1783, *Nix. Dix.* 146, which annexes the islands and dry land, awarded to this state by the agreement, to the nearest townships and counties, but nothing is contained in it respecting the exercise of jurisdiction on the water. An act was passed by the legislature of Pennsylvania, in 1786, which is probably still in force, and which annexes not only the islands and the dry land awarded to that state, but the river itself, to the nearest townships and counties, and authorizes the courts and officers of those townships and counties to exercise jurisdiction on the water, so far as they can do so consistently with the provisions of the agreement. Whether the admiralty court of this state, while there was one, had jurisdiction over offences committed on the waters of the river, out of the territorial limits of the counties, as suggested by counsel, it is not necessary now to inquire. In the absence of any legislative provision on the subject, it appears to me clear that there is now no court in this state that has power to try criminal offences committed out of the limits of the counties, except as provided for by the acts of 1797, *Nix. Dig.* 146 and 183, which do not reach this case.

By the first count of the indictment against the prisoner, it is averred that the crime was committed on board a certain steamboat, then being within and upon the water of that certain part of the river Delaware lying and being between the city of Camden, in said county of Camden and state of New Jersey, and the city of Philadelphia, in the state of Pennsylvania, and between the shores of said river there, and within the exclusive jurisdiction of this state, the prisoner having first been apprehended and

prosecuted in the said county of Camden. For the reasons I have stated, this count is radically defective, in not showing that the offence was committed in the county of Camden.

Under the other count, which alleges the offence to have been committed at the city of Camden, in the said county of Camden, and within the jurisdiction of the court, in the usual form, I think the prisoner might have been legally convicted, had it appeared that in fact the crime was committed on the Jersey side of the middle of the river, so as to be within the limits of the county, as before stated. But of this there was little evidence, and certainly it was not so clearly proven as to render it safe to consider it as established. The question, whether the crime was committed within the county of Camden, ought to be submitted to the consideration of a jury, if the prosecutor of the state shall think the evidence will justify doing so ; and that this may be done, or that a *nolle prosequi* may be entered, I am of opinion that the Oyer and Terminer should be advised to grant a new trial.

THE CHIEF JUSTICE, and Justices POTTS and HAINES concurred.

CITED in *Donnelly* v. *State*, 2 *Dutch.* 473; *State* v. *Babcock*, 1 *Vr.* 33.